**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 11 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TRINA NATAY,

      Plaintiff-Appellant,

v.

MURRAY SCHOOL DISTRICT,

      Defendant-Appellee.

No. 04-4084
(D.C. No. 2:02-CV-943-PGC)
(D. Utah)

**ORDER AND JUDGMENT** *

Before **EBEL**, **BALDOCK**, and **KELLY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Trina Natay, a Native American woman, was employed as a provisional teacher by defendant Murray School District. When her contract was

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

not renewed, she filed this Title VII action alleging that the school district had discriminated against her based on her race. The district court granted summary judgment in favor of defendant. We exercise jurisdiction over Plaintiff's appeal and affirm.

I.      Background [1]

Murray School District hired Plaintiff as a provisional teacher for the 1998-1999 school year and assigned her to Longview Elementary School, under the supervision of the principal, Dr. Janet Evans. Plaintiff was the only Native American in the group of 47 recently-hired provisional teachers and on the Longview faculty.

Plaintiff describes her treatment at Longview as discriminatory from the start. Dr. Evans snubbed her at the first staff meeting; came late to her scheduled evaluations; and disciplined her, but not the other teacher, when they both returned late from a lunch break. Aplt's Br. at 5-6. At one point, Dr. Evans told Plaintiff that she was "geographically, racially, culturally, and socially out of place" at Longview. *Id.* at 6. Dr. Evans gave Plaintiff unfavorable evaluations and eventually recommended that her contract not be renewed.

---

[1]     We recount the facts in the light most favorable to plaintiff, "as we must when reviewing a grant of summary judgment." *Garrett v. Hewlett Packard Co* ., 305 F.3d 1210, 1213 (10th Cir. 2002). Thus, like the district court, "we proceed[] on the basis that racially derogatory statements were made." Aplt's App. at 225.

Dr. Evans was concerned that her recommendation would result in a discrimination action against the school district. She asked the school district superintendent, Dr. Richard Tranter, to conduct an independent evaluation of Plaintiff's performance. Dr. Tranter made three visits to Longview to observe Plaintiff's classroom, but Plaintiff was "either reading while an outside volunteer taught the class, or she was otherwise not actively teaching the class." Aplt. App. at 163. He reviewed critical letters from parents of students and Plaintiff's colleagues. He also met with Plaintiff to discuss her effectiveness as a teacher and her claims of discrimination. Ms. Natay asked for a meeting with Dr. Tranter and used the opportunity to assert a discrimination complaint. *Id.* at 148. She also asked that her evaluation be disregarded because Dr. Evans' tardiness meant that Dr. Evans did not see the portion of the teaching day that Plaintiff had prepared for evaluation. *Id.* at 148.

Dr. Tranter decided that Plaintiff was "not an excellent teacher and not someone [he] would want Murray School District to hire on a long-term basis." Aplt.'s App. at 149. He informed Plaintiff of his decision not to renew her contract. Shortly afterwards, Plaintiff asked for and received an informal conference with Dr. Tranter. *Id.* Plaintiff's arguments during the conference did not change his decision. *Id.* Of the district's provisional teachers hired for

that school year, only Plaintiff's contract was not renewed. On Plaintiff's last day of work, Dr. Evans made another racially derogatory comment to her.

Plaintiff brought her discriminatory discharge claim in federal district court. The court entered summary judgment in favor of defendant. Plaintiff expresses the issue on appeal as "[w]hether an employer can escape Title VII liability simply because the titular decisionmaker was not personally motivated by discrimination despite the absence of meaningful investigation by the employer when the supervisor who allegedly discriminated had leverage and influence in the decision to reject the employee." Aplt's Br. at 3.

II.    Discussion

This court reviews

> the district court's grant of summary judgment de novo, using the same standards applied by the district court. The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party. Summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004) (citations and internal quotation marks omitted).

Title VII prohibits an employer from discriminating against "any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). In some circumstances, a "statement[] on the part of a defendant showing a discriminatory

motivation" may be considered direct evidence of racial discrimination. *Kendrick v. Penske Transp. Servs., Inc,*. 220 F.3d 1220, 1225 (10th Cir. 2000). Here, Plaintiff asserts that she has come forward with direct evidence of discrimination–the comments of Dr. Evans. However, Dr. Tranter was the ultimate decision maker, not Dr. Evans. And Plaintiff concedes that she lacks evidence showing that "Superintendent Tranter had a discriminatory reason not to renew her contract." Aplt's Br. at 21.

Lacking direct evidence of discrimination, Plaintiff may utilize the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See EEOC v. Horizon/CMS Healthcare Corp*., 220 F.3d 1184, 1191-92 (10th Cir. 2000). Under this approach, a plaintiff must first establish a prima facie case of unlawful discrimination, so that the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer produces such a reason, the burden returns to the plaintiff, who can avoid summary judgment by showing that the employer's proffered reason was merely a pretext for unlawful discrimination. *Id*.

Here, the prima facie case for Plaintiff's claim requires a showing that: (1) she belongs to a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated less favorably than others. *Exum v. U.S. Olympic Comm.,* 389 F.3d 1130, 1134 (10th Cir. 2004).

Plaintiff's evidence satisfies these requirements and thus establishes a prima facie case. As a consequence, she succeeded in shifting the burden to the school district to produce a nondiscriminatory reason for its employment decision. *Id.* at 1134-35.

The school district's justification for the nonrenewal of Plaintiff's contract is lack of performance. Plaintiff asserts that this reason is pretextual and unworthy of belief, again pointing to the remarks and behavior of her principal, Dr. Evans. "Language . . . showing some racial animus, may be significant evidence of pretext once a plaintiff has set out the prima facie case." *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998).

In this instance, however, Plaintiff must rely upon the "cat's paw" doctrine to connect the principal's racial bias to the superintendent's decision. The doctrine provides that "under certain circumstances, a defendant may be held liable if the manager who discharged the plaintiff merely acted as a rubber stamp, or the 'cat's paw,' for a subordinate employee's prejudice, even if the manager lacked discriminatory intent." *Kendrick*, 220 F.3d at 1231; *see English v. Colo. Dept. of Corr.,* 248 F.3d 1002, 1011 (10th Cir. 2001).

In the Tenth Circuit, a plaintiff may not recover under this theory without showing "'that the decision maker followed the biased recommendation [of a subordinate] without independently investigating the complaint against the

employee.'" *English*, 248 F.3d at 1011 (quoting *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). An important factor is whether, during the course of the investigation, the decision maker allows the claimant to give his version of events. *Id.*

Plaintiff challenges the independence of Dr. Tranter's evaluation. She states that his investigation was inadequate, primarily because he "never set foot in her classroom to evaluate or observe her." Aplt.'s Br. at 18. Her contention is not inconsistent with Dr. Tranter's assertion that he observed her from outside the classroom on three occasions. Additionally, Dr. Tranter's affidavit details other steps in his investigation of Plaintiff's performance and states that, based on the investigation, he decided that Plaintiff's contract should not be renewed due to her ineffectiveness as a teacher. And it is uncontested that Dr. Tranter met with Plaintiff two times to discuss her performance.

A cat's paw claim cannot be maintained when the ultimate decision maker conducted an independent investigation and also allowed the plaintiff a chance to respond directly to the reasons for the decision. The evidence of record establishes a sufficiently independent investigation by Dr. Tranter to insulate his decision from any bias of a subordinate. Accordingly, Plaintiff's showing does not reasonably give rise to an inference that the reasons Dr. Tranter gave for the

nonrenewal were pretextual.  Summary judgment was the appropriate disposition of Plaintiff's claim.

The judgment of the district court is AFFIRMED.


Entered for the Court


David M. Ebel
Circuit Judge